We have said in Weatherford v. State, 31 Tex.Cr.R. 530, 21 S.W. 251, 252, 37 Am. St.Rep. 828, that:

"Upon grounds of public policy, courts have almost universally agreed upon the rule that no affidavit, deposition, or other sworn statement of a juror will be received to impeach a verdict, or to explain it, or to show on what grounds it was rendered (2 Thomp.Trials, § 2618, and authorities cited), and the wisdom of the rule needs no argument to support it."

Also see Pilot v. State, 38 Tex.Cr.R. 515, 43 S.W. 112; Montgomery v. State, 13 Tex.App. 74; Bacon v. State, 61 Tex. Cr.R. 206, 134 S.W. 690. Our Supreme Court, in the year 1865, in Johnson v. State, 27 Tex. 758, said: "No case has yet occurred in this State wherein the courts have tolerated affidavits * * * to impeach their verdict. If ever admissible they can only be allowed in an extreme case and under an imperative necessity for the accomplishment of justice." The rule rests upon the obvious ground that were it otherwise few verdicts would escape attacks from jurors under influences that would be brought to bear upon them after their discharge by the court.

Appellant insists that the statements of such two jurors was the reception of further evidence in their jury room, and therefore comes under subdivision 7 of Art. 753, C.C.P. We are not in accord with this contention, but are impressed with the idea that such statements should be classified as an attempt to impeach their own verdict, and such proceedings cannot be allowed.

The facts merely show that appellant sold a cow that Mr. Schulze and one other said belonged to Schulze. Appellant, when his right to such cow was challenged, claimed to have purchased her from a Mexican named Juan, not knowing she was stolen. The trial court placed upon the State the burden of disproving the reasonableness of such explanation, and the jury's verdict seems to indicate that the State was successful in so doing.

The motion is therefore overruled.

## LOBSTEIN v. WATSON.

### No. 2503.

Court of Civil Appeals of Texas. Eastland.

March 16, 1945.

Rehearing Denied April 13, 1945.

Baker & Baker, of Coleman, for appel-lant.

Scarborough, Yates & Scarborough, of Abilene, for appellee.

GRISSOM, Justice.

J. C. Watson brought this suit against W. M. Lobstein to recover a real estate dealer's commission. Plaintiff alleged that he found a purchaser for Lobstein's farm, to wit, J. M. Greenwood, who accepted in writing the offer to sell communicated to him by plaintiff for the defendant; that plaintiff brought said parties together; that Lobstein and Greenwood entered into an agreement whereby Greenwood was to purchase and Lobstein was to sell said farm; that Lobstein "refused to perform;" and that plaintiff thereby earned his commission as a real estate dealer, under the written contract between Watson and Lobstein. The case was submitted to a jury on the general issue, and the jury answered, "We, the jury, find for the plaintiff, J. C. Watson." Judgment was rendered for plaintiff, and defendant Lobstein has appealed.

By his first two points defendant asserts that the court erred in overruling his motion for an instructed verdict, (1) because plaintiff failed to prove he produced a purchaser ready, willing and able to purchase the land, and (2) because plaintiff failed to allege and failed to prove that he was a licensed real estate agent. Defendant did not except to plaintiff's petition. Texas Rules of Civil Procedure, rule 90, provides that every defect in a pleading, either of form or substance, which is not specifically pointed out shall be deemed waived. At the close of the evidence defendant moved for a directed verdict, but he did not state any grounds therefor. Rules of Civil Procedure, rule 268, provides that such a motion "shall state the specific grounds therefor."

Defendant contends that plaintiff failed to allege and prove that he was a licensed real estate dealer or salesman. He contends that such failure though not pointed out or objected to in any manner in the

trial court may be presented for the first time on appeal. He contends that the provision of Article 6573a, Sec. 13, Vernon's Ann.Civ.St., that a real estate dealer or salesman shall not bring or maintain an action for commission in the courts of Texas without alleging and proving that he was a licensed real estate dealer or salesman at the time the cause of action arose, is both mandatory and jurisdictional.

 A cause of action on behalf of a real estate dealer or salesman for a commission for making a sale of real estate was not created by this statute. It existed at common law. We are of the opinion that the defect in plaintiff's petition was waived by defendant's failure to point it out to the trial court, as required by Rules of Civil Procedure, rule 90; 20 Tex. Law Review 30; Steed v. State, Tex.Civ.App., 180 S.W.2d 446, 447; Id., Tex.Sup., 183 S.W.2d 458, 459; Texas Osage Co-op. Royalty Pool v. Kemper, Tex.Civ.App., 170 S.W.2d 849, 852, writ refused; Litterst v. Edmonds, Tex.Civ.App., 176 S.W.2d 342, writ refused want of merit; Prendergast v. Prendergast, Tex.Civ.App., 122 S.W.2d 710.

 Plaintiff failed to allege that he had a license as a real estate dealer or salesman. If, as defendant contends, he also failed to prove such fact, this court is not authorized to reverse the judgment for that reason. Defendant did not point out such defect in the proof to the trial court by motion for an instructed verdict, motion for a new trial or in any other manner. Wright v. Carey, Tex.Civ.App., 169 S.W.2d 749, 753; Maryland Casualty Co. v. Talley, 5 Cir., 115 F.2d 807; Atlantic Greyhound Corp. v. McDonald, 4 Cir., 125 F.2d 849, 850. But defendant contends that the provision of Art. 6573a, sec. 13, that such a suit cannot be brought or maintained without alleging and proving that plaintiff was a licensed real estate dealer or salesman, is mandatory and jurisdictional and that such failure constitutes fundamental error, for which this court should reverse the judgment. This court held in City of Santa Anna v. Leach, Tex.Civ.App., 173 S.W.2d 193, 198, that Courts of Civil Appeals in Texas no longer have authority to reverse a judgment for fundamental error not presented in a motion for a new trial. See also Douglas v. Douglas, Tex.Civ.App., 167 S.W.2d 774, 776. However, if we still possess such authority, under the decisions of the Supreme Court, we cannot inspect

a statement of facts to determine whether or not there is a lack of proof that plaintiff had a license. Texas & P. R. Co. v. Lilly, 118 Tex. 644, 23 S.W.2d 697. In Insurors Indemnity & Ins. Co. v. Associated Indemnity Corp., 139 Tex. 286, 295, 162 S. W.2d 666, 670, our Supreme Court said: "If it requires an examination of the statement of facts to disclose error, no question of fundamental error is presented." See also Blackmon v. Trail, Tex.Com.App., 12 S.W.2d 967, 968, and Trevino v. Kibbe, Tex.Civ.App., 133 S.W.2d 206. Therefore, we overrule defendant's contention that the judgment should be reversed because of plaintiff's failure to allege and prove that he was a licensed real estate dealer or salesman.

 In Hutchings v. Slemons, 141 Tex. 448, 452, 174 S.W.2d 487, 490, 148 A.L.R. 1320, the Supreme Court had under consideration section 22 of Article 6573a, which provides that "no action shall be brought" in any court in Texas for recovery of a real estate dealer's commission, unless the agreement upon which said action is brought or some memorandum thereof is in writing. The Court observed that said section did not in terms condemn an oral contract; that it was in effect an addition to the statute of frauds; that the statue of frauds, including section 22, Art. 6573a, did not render void or illegal a contract within its terms, and that the statutes establish "a rule of evidence." It is well established that the defense that plaintiff's cause of action is within the statute of frauds is waived by not raising it in the trial court and that it cannot be raised for the first time on appeal. 20 Tex.Jur. 354. See also 8 Am.Jur. 1116; O'Connor v. City of Fond Du Lac, 109 Wis. 253, 85 N.W. 327, 53 L.R.A. 831; 21 R.C.L. 463; 82 A. L.R. 754; Continental Supply Co. v. Hoffman, 135 Tex. 552, 144 S.W.2d 253, 255; Mingus v. Wadley, 115 Tex. 551, 558, 285 S.W. 1084; Enfield Realty & Home Bldg. Co. v. Hunter, Tex.Civ.App., 179 S.W.2d 810; Render v. Lillard, 61 Okl. 206, 160 P. 705, L.R.A.1917B, 1071; 50 Am.Jur. 46 and 41 Am.Jur. 565.

 In this connection we also call attention to Texas Rules of Civil Procedure, rule 374, which provides that where a motion for new trial is required, as it was in this case, that the motion shall constitute the assignments of error on appeal and that a ground of error "not distinctly set forth in the motion * * * shall be con-

sidered as waived." Plaintiff's failure to either allege or prove he had a license is not mentioned in defendant's motion for a new trial. See Traders & General Ins. Co. v. Yarbrough, Tex.Civ.App., 181 S.W.2d 305, 311, writ refused want merit; Thompson v. State, Tex.Civ.App., 165 S.W.2d 131, 134; and Cooper v. Cooper, Tex.Civ.App., 168 S.W.2d 686, 689.

■ The evidence was sufficient to raise an issue of fact as to whether plaintiff produced a purchaser ready, able and willing to buy on the terms stipulated in the written listing by Lobstein with Watson. The jury, by its general verdict, presumably, has answered that issue in favor of Watson.

The written contract empowered Watson to sell Lobstein's land and to "contract with purchaser for sale of said premises according to the price and terms" stated therein. The contract provided that Watson might sell "and contract with purchaser for sale of said premises" on the following terms: $25 per acre, with $1,000 cash, $1,000 Federal Land Bank Loan, balance $500 annually, with 6 per cent interest. The statement of facts is not in question and answer form, but it is agreed to. It shows that Watson advertised Lobstein's place for sale. That Greenwood knew the terms and conditions of the agency contract between Watson and Lobstein, and Greenwood sent a telegram to Watson, stating, "I will take Lobstein place, will communicate when letter received." The statement of facts further shows that while the Watson-Lobstein contract was still in force Watson brought Lobstein and Greenwood together and "the parties verbally agreed for the sale of the land for the price named in the contract and upon terms mutually satisfactory." It shows, however, that "further writing was entered into" and the parties separated about 12 o'clock with the understanding they were to meet again at one o'clock P.M. "to consummate the deal." There was a dispute as to where the parties agreed to meet at one o'clock. They went to different offices and each apparently waited for the arrival there of the other. According to plaintiff's evidence, which we must accept in deference to the verdict, Watson and Greenwood waited at the office agreed upon for some time, then went to the office where the parties had separated at noon and found that Lobstein had been there from one until three thirty or 4 o'clock P. M.; that Watson and Greenwood then went to Coleman looking for Lobstein; they failed to find him there and finally arrived at Lobstein's home about dark. There, according to plaintiff, Greenwood told Lobstein "he was ready to buy the place" and Lobstein refused to have any further dealings with them because "they had stood him up at Lowe's office until three * * *."

■ Defendant's third point is that the court erred in permitting the plaintiff to prove that Greenwood brought his household goods and implements with him to Brownwood. The record shows that Greenwood testified that on the day he met Watson and Lobstein in Brownwood, he brought his household goods and implements with him. This was after Greenwood had sent a telegram accepting the offer to sell made by Watson, and was on the same day that, according to the agreed statement of facts, "the parties verbally agreed for the sale of the land for the price named in the contract and upon terms mutually satisfactory." We think the evidence was admissible as tending to show that Greenwood was ready and willing to purchase on the terms stated in the Watson-Lobstein listing agreement. Greenwood had five days prior thereto sent Watson a telegram, stating, "I will take Lobstein place * * *."

Defendant further contends the judgment should be reversed because the court sustained plaintiff's objection to testimony proffered by defendant that "after Greenwood's failure to purchase the land, he had sold it for $2.50 per acre less than he had listed it with plaintiff." The record does not disclose the precise question asked, what objection was made, nor when the land was so sold, except that it was at some undisclosed time "after" the meeting at Brownwood on January 29, 1944.

■ Defendant's fifth point is that the court erred in "refusing to permit defendant to cross examine Greenwood as to his ability to make the down payment after he had testified he did not have all the money with him, and did not think he had it in the bank." We are referred to the statement, argument and authorities under appellant's first point. The first point is that "the court erred in overruling defendant's motion for an instructed verdict. Since plaintiff failed to prove that he had produced a purchaser who was ready, willing and able to purchase the land." We have heretofore shown that the statement

of facts is not in question and answer form and does not clearly disclose the exact situation as to the question asked, the objection made and the like. The record shows that defendant was permitted to cross examine Greenwood; that Greenwood had testified that on January 29th he was in position "to have paid the cash payment." That on cross examination Greenwood said he probably did not have the full amount in the bank; "that he did not have it in cash with him at the time." On re-direct examination he testified, "he had the money available to pay the cash payment required." That defendant's counsel asked what he "meant by having the money available—if he did not mean that he had property with which he expected to put up as collateral to get the money. When this question was asked, plaintiff's counsel objected to it and the court sustained the objection and refused to permit defendant's counsel to have said witness testify in answer to said question, which the defendant's counsel expected the witness to testify by having the money available he meant that he did not have it in cash with him in Brownwood and did not have it in the bank but expected to put up property or collateral with which to obtain the money." It will be observed that the exact language of the question is not shown, nor is the objection thereto shown. If the witness had answered "yes" we do not see how plaintiff could have been benefited thereby. The witness had already testified that he probably didn't have as much as $1,000 in the bank and did not have it in cash with him at the time. Unless defendant had been able to go further and show that Greenwood did not have the necessary collateral, and that he had not made arrangements for the money needed and could not do so, we do not believe he showed he was probably injured by the action of the court in sustaining an undisclosed objection. There is no statement nor even an indication in the brief or statement of facts that defendant expected to prove the additional matters suggested, which, taken together with the matters disclosed, might have shown that Greenwood was not able to purchase and, therefore, that defendant probably was injured by the action of the court. Rules of Civil Procedure, rule 434, provides that "no judgment shall be reversed on appeal * * * on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment * * *." When the uncertainty of this record, heretofore mentioned, is considered in connection with the further fact that the statement of fact discloses an agreement (1) that Greenwood knew the terms and conditions of the Watson-Lobstein contract and had answered Watson's advertisement by sending a telegram to him stating that he would take the Lobstein place, and (2) that "the parties verbally agreed for the sale of the land for the price named in the contract and upon terms mutually satisfactory," along with the additional facts that the only excuse given for not consummating the contract was that Watson and Greenwood did not appear at the place where Lobstein was waiting to consummate the deal for two hours, which they explain by saying they had agreed to meet at a different place, and when it is undisputed that they went to see him late that same day and Lobstein refused to further deal with them, we are unable to say that the alleged errors of the court probably caused the rendition of an improper judgment. Rules of Civil Procedure, rule 434. Furthermore, said fifth point is not raised in defendant's motion for a new trial and was therefore waived. Rules of Civil Procedure, rule 374.

The judgment is affirmed.