TEXAS EMPLOYERS' INSURANCE
ASSOCIATION, Appellant,

v.

Foster SPIVEY, Appellee.

No. 15667.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 23, 1955.

Rehearing Denied Jan. 27, 1956.

Nelson & Sherrod, Lyle B. Cherry, and Walter Nelson, Jr., Wichita Falls, for appellant.

Peery & Wilson, Kearby Peery, Wichita Falls, for appellee.

RENFRO, Justice.

The trial court entered a judgment for plaintiff Spivey in a workmen's compensation case for total and permanent disability. Texas Employers' Insurance Association was the defendant.

■ The defendant alleges reversible error on the part of the court in refusing to allow its counsel to fully and completely cross-examine the plaintiff's doctor witness and in refusing to allow full cross-examination for the purpose of developing its bill.

Defendant was allowed free, full and unrestricted cross-examination of the witness in regard to his examination, treatment and opinions concerning the plaintiff's injuries, and was unrestricted in cross-examining him at great length regarding many other matters. It was also permitted to cross-examine the doctor on several reports made by the doctor concerning other persons disassociated with the suit on trial. After allowing cross-examination concerning several such reports, the court sustained an objection to cross-examination concerning additional reports on other persons, and it is to this action the defendant objects. The doctor was permitted, for the purpose of a bill, to testify that he signed the reports exhibited to him (more than twenty in number). In the instant case the doctor had testified that the plaintiff had a case of well-developed hypertrophic arthritis and was totally and permanently disabled. It is the contention of defendant that the doctor had examined other persons similarly affected with hypertrophic arthritis, wherein he had made different conclusions as to the amount of disability suffered and the length of time over which it might last.

Inasmuch as the reports were never tendered in evidence and are not before us, we are of course unable to say whether they contained impeaching matters. Dr. Parnell freely testified that he is a frequent witness in court for claimants, that he is paid for his time and that he makes reports to lawyers. Some of the reports that were identified do not show back injuries and some do not report permanent and total disability. It is not pointed out to us wherein impeachable statements were contained in the reports not introduced in evidence.

■ While defendant was making its bill in the absence of the jury, Dr. Parnell, plaintiff's witness, was asked, "Do you recall ever making a report in any case of hypertrophic arthritis wherein you reported that the man is not able to do ordinary hard labor, but can do light work?" The witness answered, "Yes, sir, I have reported that. * * * That is correct. I have done that several times, and everybody else has." Whereupon the court stated, "I am not going to exclude that statement from the jury." Defendant's attorney then announced, "All right, we have some more, Your Honor." The court then stated, "I will permit that before the jury." So far as the record discloses, the defendant did not avail itself of the opportunity to present such testimony to the jury. Due to the above ruling, we feel we are justified in assuming that the court would have permitted cross-examination upon any contradictory or inconsistent statements that might have been contained in said reports. The manner of the cross-examination and its extent must rest largely in the discretion of the trial judge. McCormick and Ray, Texas Law of Evidence, p. 359.

Under the state of the record, we cannot hold that the trial judge abused his discretion in limiting the cross-examination in the manner in which he did.

The other points of error claim that plaintiff was not entitled to judgment because he failed to make proper proof of his wage rate.

■ The jury found in answer to issues Nos. 15 and 16 that plaintiff had worked in the same or similar employment for the same employer for substantially the whole of the year next preceding the date of his injury at an average weekly wage of $78.89, and in answer to issues Nos. 17 and 18 found that another employee of the same class worked substantially the whole of the year for the same or other employers in

the same or similar employment at an average weekly wage rate of $87.28. Judgment was entered for a lump sum, based on a compensation rate of $25 per week, the defendant having agreed to pay a lump sum in the event of finding of total and permanent disability

Plaintiff had worked for the same company for several years. He was injured on April 28, 1954. From March 2, 1954, to the date of his injury he worked as a truck driver at an hourly wage of $1.40 per hour, with time and a half for overtime. During that period he earned $478.85.

From April 28, 1953, to March 2, 1954, he worked as a truck pusher at a monthly salary of $375. His total earnings for the twelve months immediately preceding his injury amounted to $4,112.85. Both as "pusher" and "driver" he loaded, unloaded and drove trucks. As "pusher" he had additional duties, including supervising other drivers. His injury occurred while he was loading a truck.

Prior to trial, the defendant, in response to request for admissions, admitted it had paid plaintiff compensation at the rate of $25 per week for a number of weeks following the injury. Uncontradicted evidence shows such $25 payments were made for ten weeks.

The defendant contends issues Nos. 15 and 16 are not supported by the evidence and that Nos. 17 and 18 must be disregarded because the jury found that plaintiff did work for substantially the whole year preceding his injury, even though said finding is not supported by the evidence. The defendant offered no evidence tending to show that $25 per week was not the proper compensation rate. Under either finding by the jury, the plaintiff was entitled to the $25 maximum compensation rate. There is no conflict in the finding.

Defendant made no showing that the $25 weekly compensation payments were made upon misrepresentation by anyone, or by mistake of fact as to plaintiff's wage rate;

nor was it shown or contended that plaintiff's compensation rate should be less than $25 per week. In the absence of any evidence that the payments were made upon mistake or misrepresentation as to plaintiff's wage rate, or that he was entitled to a smaller compensation rate, defendant's admission, and the undisputed evidence, that defendant paid plaintiff $25 per week compensation for ten weeks, together with the evidence of plaintiff's earnings, is sufficient to support the judgment based on that rate. Traders & General Ins. Co. v. Harper, Tex.Civ.App., 140 S.W.2d 593; Texas Employers Ins. Ass'n v. Hodnett, Tex.Civ.App., 216 S.W.2d 301; Employer's Casualty Co. v. Smith, Tex.Civ.App., 221 S.W.2d 322; Texas Employers Ins. Ass'n v. Hamor, Tex.Civ.App., 97 S.W.2d 1041; Traders & General Ins. Co. v. Slusser, Tex.Civ.App., 110 S.W.2d 598; Maryland Casualty Co. v. Romero, Tex.Civ.App., 146 S.W.2d 1096; Fidelity & Casualty Co. of New York v. Branton, Tex.Civ.App., 70 S.W.2d 780; Texas Employers' Ins. Ass'n v. Beckworth, Tex.Civ.App., 42 S.W.2d 827; Texas Employers' Ins. Ass'n v. Blanton, Tex.Civ.App., 266 S.W.2d 276.

The holding in the above cases might be criticized under the theory that such rule is socially bad, if not legally wrong, in view of its tendency to discourage the payment of weekly compensation in an amount greater than the minimum rate. The plaintiff in this case, nevertheless, would be entitled to the judgment rendered since the error, if any, was harmless. The plaintiff's rate would be the maximum under any method of computation; hence, the defendant could not have been prejudiced. Lawler, Texas Workmen's Compensation Law, p. 312, sec. 152; National Indemnity Underwriters of America v. Rocamontes, Tex.Civ.App., 110 S.W.2d 228; Southern Underwriters v. Jordan, Tex.Civ.App., 122 S.W.2d 260; Commercial Standard Ins. Co. v. Davis, Tex.Civ.App., 135 S.W.2d 794.

Judgment is affirmed.